UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LISA GUSTAFSON-FEIS,

          Plaintiff,

  v.

RELIANCE STANDARD LIFE INSURANCE COMPANY,

          Defendant.

CASE NO. C20-5336 BHS

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Plaintiff Lisa Gustafson-Feis's motion for summary judgment. Dkt. 13. The Court has considered the motion and the briefs filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

### I. FACTUAL AND PROCEDURAL BACKGROUND

**A.  Overview**

Gustafson-Feis is a 48-year-old professional suffering from a serious hip injury. She filed a claim for long-term disability benefits with her insurer, Defendant Reliance Standard Life Insurance. Reliance rejected her claim, contending that it was barred by the policy's pre-existing condition exclusion. The exclusion provides that:

Benefits will not be paid for a Total Disability:

    (1) caused by;
    (2) contributed to by; or
    (3) resulting from;

A Pre-existing Condition . . . .

A "Pre-Existing Condition" means any Sickness or Injury for which the Insured received medical Treatment, consultation, care or services, including diagnostic procedures, or took prescribed drugs or medicines, during the three (3) months immediately prior to the effective date of insurance.

AR 24–25 (Dkt. 13-1 at 27–28).[1]

The parties dispute how to calculate Gustafson-Feis's effective date of insurance and corresponding look-back period under the policy and dispute whether injuries Gustafson-Feis sustained in an accident in 2016 caused or contributed to her current injury.

**B.   Gustafson-Feis's Medical and Professional History**

Gustafson-Feis worked as a contractor for Microsoft for many years, creating product lines. In June 2016, she was hit by a passenger van while traveling in New York and fractured her low spine and pelvis. AR 2408–16. She had hardware implanted in reconstructive surgery and returned to work full time in September 2016 with some restrictions, such as using a walker. AR 7092–99. She did extensive physical therapy and declared that by September 2017, she was "back to normal, on my own two feet, able to

---

[1] The parties dispute whether Gutaftson-Feis would be covered under the "CORE" or "BUY-UP" version of the long-term disability policy. The pre-existing condition exclusion is the same in each.

ORDER - 2

do any and all activities, even wear heels and work out in the gym." AR 7093–95. She described activities including moving furniture upstairs, sanding, painting, and reupholstering furniture, and extensive gardening and hauling gardening materials, and explained that she used a cane only rarely. AR 7095. She also described a month-long trip to Germany in November 2017 involving extensive activities such as walking several hours per day and explained that she "did not use any assistive devices whatsoever, at any point during the trip." AR 7097.

On December 4, 2017, her surgeon, Dr. Henry Sagi, noted that she still had some pain related to nerve damage down the front of her thigh but cleared her to go skiing and released her from restrictions. AR 0766. On December 13, 2017, Gustafson-Feis saw her primary care provider, ARNP Lauren Schweizer, who refilled prescriptions, including Tramadol for pain, and noted that Gustafson-Feis was attempting wean down that medication. AR 0583. Gustafson-Feis refilled a prescription for Gabapentin, a medication used to control nerve pain, on January 16 and February 20, 2018. Dkt. 13 at 14.[2] She renewed her Tramadol prescription on January 26, 2018. AR 0456.[3] She also called

---

[2] Reliance cites AR 1791–1808 for these prescriptions, which do not appear to be included in the excerpts of the administrative record either party has provided to the Court. However, Gustafson-Feis does not dispute the identified refills in reply. While "a non-movant's failure to respond" to arguments made in a motion for summary judgment does not constitute "a complete abandonment of its opposition to summary judgment[,]" "the opposing party's failure to respond to a fact asserted in the motion permits a court to 'consider the fact undisputed for the purposes of the motion.'" *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (quoting Fed. R. Civ. P. 56(e)(2)).

[3] Gustafson-Feis identifies a Tramadol refill on January 16, 2018 in her motion, Dkt. 9 at 9, but does not cite to the record, and later references a January 26, 2018 refill, *id*. at 20, which is consistent with Reliance's cited February 19, 2020 denial letter, AR 0456. It appears that the January 26 date is correct, but the discrepancy is not material for the purposes of the motion.

Schweizer's office on February 7, 2018 to request a note for an ergonomic desk at her upcoming new job with HCL, Inc., contracted to Microsoft. AR 0424. Gustafson-Feis asserts that ergonomic desks are standard-issue at Microsoft for full-time employees, but contractors must submit a doctor's note. *Id*. She refilled her Tramadol prescription again on March 16, 2018.[4]

Gustafson-Feis started with HCL in February 2018. Her job was very active, requiring extensive walking around the expansive Microsoft campus transporting prototypes in and out of storage, as well as travel to China.

HCL provided short- and long-term disability insurance to its employees through Reliance. These plans are governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). HCL made available a "Core" long-term disability benefit which paid 60% of an employee's covered monthly earnings and a "Buy-Up" long-term disability benefit which paid 70%. AR 24–25.

While on a work trip to China in May 2018, Gustafson-Feis experienced a sharp pain in her left hip, which led to difficulty walking. She saw Dr. Sagi and his resident Dr. Sara Putnam on June 18, 2018. AR 0767. Dr. Putnam reviewed x-rays indicating no change in previous conditions, and gave her impression:

> 45 year old female with left anterior hip pain concerning for either psoas tendinitis or possible intra-articular pathology, including a cartilage flap or labral tear. Given the degree of her symptoms, it is very unlikely that they [sic] small amount of heterotopic ossification in her left anterior hip soft tissues is causing her pain. We recommend proceeding with a left hip MR arthrogram.

---

[4] *See supra* note 2.

AR 0768. The MR arthrogram showed a labral tear and cartilage damage in her left hip. AR 1074–75.

Gustafson-Feis saw ARNP Schweizer on July 3, 2018 for her annual exam. AR 0586–87. The chart notes reflect that Gustafson-Feis "recently returned from a trip to China, where she re-aggravated her hip." *Id.* Schweizer's August 29 notes reflect that Gustafson-Feis visited following

> a re-injury to prior hip and pelvic fracture. Pt recently diagnosed via MRI with an acute Labral tear within L hip at site of previous crushing injury. Pt currently is in significant pain and is unable to walk for prolong [sic] periods of time without a walker or wheelchair. Pain is constant 8/10 at all times.

AR 586. Schweizer's notes also reflect that Gustafson-Feis had to identify a new orthopedist as Dr. Sagi was leaving the area. AR 587. Gustafson-Feis saw Schweizer on October 12, 2018 for an ER follow-up and referral, and Schweizer's notes state that "Pt is here today for a F/U to recent reinjury of pelvis/sacrum. This resulted from a fall and Pt went to ER for evaluation. Imaging was done and diagnosis of labral tear." AR 4042.

Gustafson-Feis applied for short-term disability benefits with Reliance on August 20, 2018, supported by a Medical Certification form from Schweizer with a diagnosis of "pelvic pain left hip acetabular labral tear involving anterior and superior segments" and concurrent disabling condition of "labral tear with acute hip pain in setting of chronic pain with prior and recent trauma." AR 491–92.

Gustafson-Feis saw a new orthopedist, Dr. Keith Mayo, in November 2018. Dr. Mayo's opinion was that:

> her pain is likely multifactorial with components from the hip, posterior pelvic ring, as well as a neurogenic component to her pain . . . . Her pain is likely exacerbated by her continued gait disturbance and immobility and deconditioning. Her labrum, while possibly pathologic, is not likely to be the source of the majority of her pain given her pattern of symptoms.

AR 537. He suggested elective removal of some of her permanent hardware "as removal may make some of her posterior pelvic pain better, although this will not completely eliminate all of her pain." AR 537. Chiropractic records in January 2019 reflected that her 2016 injuries

> caused a lot of damage to her low back and pelvis. She has since had surgeries and now has some nerve damage in the lower back and anterior thighs. She was doing pretty well after all the physical therapy, chiropractic, acupuncture, and medication. Then, in May 2018 she was in China for work and tore her left hip labrum with all the walking and getting in and out of busses. Now her pain has increased and she has returned to needing a walker to ambulate.

AR 3861.

In January 2019, Dr. Mayo removed the hardware, but Gustafson-Feis reported that her pain continued and included numbness and weakness. AR 0892. She saw a pain specialist, Dr. Xi Tian, in February and March 2019, who obtained MRIs showing that one of her 2016 fractures had not fused. AR 4437. Gustafson-Feis argues this demonstrates that "Dr. Mayo's decision to remove the hardware had been wrong and caused her serious harm." Dkt. 9 at 12. She then saw Dr. Mayo, who opined that "she falls into the category with relatively minor changes but disproportionate discomfort." AR 1090.

Reliance denied her long-term disability claim in April 2019. AR 283. In May 2019, Gustafson-Feis filed suit in New York state court against the parties responsible for

her 2016 accident. Dkt. 13-2.[5] Her allegations include that she suffered "severe, painful, and disabling injuries, which have caused and will continue to cause her pain and suffering, as well as a diminution in the quality of her life." *Id*. Gustafson-Feis contends that she only intended to claim disability for the wage loss she incurred due to the accident in 2016 and 2017 (prior to her return to work without restrictions after December 4, 2017). Dkt. 14 at 7.

Gustafson-Feis timely appealed Reliance's denial. She submitted a 35-page declaration describing her recovery from the 2016 accident, her extensive travel and activities following her recovery, her active trip to China before the onset of her injury, and the difficulty she encountered since then. AR 7092–126.

She also submitted letters from providers. Dr. Sagi confirmed that following her rehabilitation from the 2016 accident he had released her to full activity and explained that "[f]ollowing a trip overseas where the patient was particularly active she then began to complain of hip pain which, as I recall, was a new complaint that she had not previously voiced in the past." AR 2363. Her physical therapist stated that Gustafson-Feis had recovered from her 2016 injuries "and was back to full function until she went to China in 2018 . . . . Lisa was diagnosed with a labral tear in her hip shortly after this trip." AR 2364. Her chiropractor cited a medical journal article explaining that "74.1% of labral tears are not associated with any known specific event or cause, and these are

---

[5] Reliance makes an unopposed request that the Court take judicial notice of the lawsuit, Dkt. 13-2, which the Court grants as court filings are matters of public record appropriately subject to judicial notice, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (citation omitted).

generally insidious in onset, with the underlying inciting event thought to be repetitive microtrauma," and explained that "[t]his is consistent with Lisa's report of the hip pain coming on during a period of increased walking." AR 2369. ARNP Schweizer stated that Gustafson-Feis's records "have no evidence of treatment or complaint of a labral tear in our records until June 2018." AR 2362.

In April 2019, Dr. Tian noted that he reviewed an MRI with Gustafson-Feis and "[u]nfortunately, there appears to be a left side sacrum fracture that has NOT fused (now it's 3 years post her trauma and corrective surgery)." AR 4148. He further noted that "It appears that the CT scan we ordered confirmed TWO sacrum fractures. It's not clear if these are the pain source. Her pain primarily on the left side and does correlate to the identified LEFT labrum tear." AR 4150. In October 2019, his notes state that "Over all we reviewed that since her primary pain is the left deep pelvic/left deep hip pain, it's reasonable to see if the labrum tear repair offers relief." AR 7956.

Gustafson-Feis then saw Dr. James Bruckner, an orthopedist, who diagnosed "quite extensive complex tearing in the left acetabular labrum mater . . . . Therefore, Lisa has cam-type femoroacetabular impingement with an elevated alpha angle." AR 7804. Dr. Bruckner provided Gustafson-Feis a written description of cam-type femoroacetabular impingement ("FAI"), which explained that FAI "**occurs as the result of structural abnormalities of the hip. FAI involves excess bone that occurs at some point after birth. It is unclear when, how, and why it occurs.** It typically first appears in teenage years or early adulthood." AR 7788 (emphasis added). Gustafson-Feis emphasizes that she submitted this record to Reliance.

ORDER - 8

1       Dr. Carol Hulett, Board Certified in Orthopedic Surgery, reviewed Gustafson-
2  Feis's appeal for Reliance, in a report dated December 9, 2019. AR 7924–27. The report
3  lists medical records reviewed through October 30, 2019 and lists Dr. Bruckner's October
4  30 after-visit summary, which contained the description of FAI. AR 7925. Dr. Hulett
5  reviewed a look-back period from November 13, 2017 through February 13, 2018,
6  determining that:

> The most logical conclusion after a review of the medical records is that her alleged impairing conditions as of 8/20/18 were **directly related** to the conditions for which she was treated as of 11/13/17-2/13/18. Complaints of pain were consistent and all records refer back to the original MVA of 2016. There was the occasional mention of exacerbation of hip or back pain related to activities but there was never any indication of a new injury or new complaints until much later. There is mention by orthopedics of the severe pelvic crush injuries sustained in the accident. Her records are **most consistent with** a gradual progression of symptoms and not any new injury. The screws were removed from her left SI joint in 01/2019 relieving some pain but with ongoing back pain imaging then showed the non-union of the sacral fracture.

AR 7927 (emphasis added).

Dr Bruckner repaired the labral tear on November 7, 2019 and, in a November 21 follow up visit, noted that Gustafson-Feis "overall is quite pleased with the results thus far." AR 7959.

In December 2019, Gustafson-Feis saw Dr. Christopher Boone, another orthopedist. AR 7946–49. She told him that she was experiencing debilitating sacroiliac joint pain and without it "she would be up and moving particularly regarding the labral repair performed by Dr. Bruckner." AR 7946. He opined that "her buttock pain is likely nonunion of the sacral fracture causing degenerative changes as noted on the imaging. By

ORDER - 9

removing the screws this has unfortunately only increased her instability," and recommended a sacroiliac joint fusion to address this. AR 7949.

In February 2020, Dr. Hulett provided an addendum reviewing the additional records from Drs. Bruckner and Boone and considering the look-back period Gustafson-Feis believed was correct (December 14, 2017 to March 14, 2018). AR 337–38. She concluded:

> Yes, as of 8/20/18 this individual continued to have complaints and functional impairment as of a result of injuries sustained in 2016 for which she received extensive treatment between 12/14/2017 - 3/14/2018.
>
> During the time period of 12/24/2017 – 3/14/2018 her treatment was largely with Pain (sic) management with medication provided for her hip complaints. Records from Pain (sic) management were limited for this specific time frame but other providers clearly mentioned ongoing treatment with Pain Management and use of pain medication. She was seen on 12/14/17 by orthopedics, Dr. Donahue for hip pain and dysesthesia. On 2/17/28 her PCP discussed her hip pain and mentioned the need for ergonomic workstation due to past injuries to her spine, hip, and pelvis.

AR 339. Reliance then upheld its denial of benefits. AR 453–60.

On January 5, 2021, Gustafson-Feis filed the instant motion for summary judgment. Dkt. 9. On January 25, 2021, Reliance responded. Dkt. 13.[6] On January 29, 2021, Gustafson-Feis replied. Dkt. 14.

## II.   DISCUSSION

The parties dispute whether Gustafson-Feis's long-term disability insurance claim is barred by the policy's pre-existing condition exclusion. Specifically, they dispute how

---

[6] Reliance filed two versions of what appear to be the same brief and supporting exhibits. *Compare* Dkt. 12 *with* Dkt. 13. The Court assumes the second-filed version is the correct one.

to calculate the look-back period under the policy's terms and dispute whether Reliance has met its burden to show the labral tear triggering Gustafson-Feis's claim for benefits was caused by the accident injury Gustafson-Feis received treatment for during the look-back period.

**A.     Standard of Review**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477

1 U.S. at 254; *T.W. Elec. Serv., Inc*., 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc*., 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

The parties agree that the Court should review this denial of long-term disability benefits *de novo*. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (citations omitted) (denial of benefits is reviewed *de novo* when a plan does not confer discretion on the administrator to determine eligibility or construe the terms of a plan). Under *de novo* review, "the court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." *Id*. Generally, "only the evidence that was before the plan administrator at the time of determination should be considered." *Opeta v. Nw. Airlines Pension Plan for Contract Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007) (citing *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943–44 (9th Cir. 1995)). Gustafson-Feis asks the Court to admit extrinsic evidence relevant to her position on the look-back period, Dkt. 9 at 21–22, while Reliance contends that the Court's entire review should be limited to the evidence before the claims examiner, Dkt. 12 at 9 (citing *Mongeluzo*, 46 F.3d at 943).

## B.     Look-Back Period

The parties hotly dispute how to calculate the pre-existing condition exclusion's three-month look-back period. Specifically, they dispute whether a waiting period applied to Gustafson-Feis's eligibility for benefits and whether she was covered under the Core benefit prior to her election of Buy-Up benefits. Gutsafson-Feis asks the Court to consider her pay records and a plan summary document (material outside the administrative record) in support of her position on the look-back period. As the Court concludes that the dispute about the look-back period does not determine the resolution of this case, it does not consider the material outside the administrative record. *Cf. Opeta v. Nw. Airlines Pension Plan*, 484 F.3d 1211, 1217 (9th Cir. 2007) (courts may consider external evidence in de novo review only "'when circumstances *clearly establish* that additional evidence is *necessary* to conduct an adequate de novo review of the benefit decision.'" (quoting *Mongeluzo*, 46 F.3d at 944) (emphasis in original)).

Reliance asserts that Gustafson-Feis's effective date of insurance was her hire date, February 13, 2018. Dkt. 13 at 12. Therefore, Reliance asserts that it appropriately asked its medical reviewers to evaluate a look-back period extending to November 13, 2018. *Id.* Reliance explains that after Gustafson-Feis appealed and claimed that she was subject to a 30-day waiting period for insurance coverage, it gave her the benefit of the doubt and also reviewed a look-back period of December 14, 2017 through March 14, 2018. *Id.*; *see also* Dkt. 9-1 at 62–63 (AR 0337–38). Reliance asserts that Gustafson-Feis "shifts her position and now argues that the effective date of coverage is March 31, 2018, which is the date she first paid a premium for Buy-Up Benefits." Dkt. 13 at 12.

1       In her motion, Gustafson-Feis does contend that under the policy's terms her
2 insurance effective date is March 30, 2018, the first day she paid premiums for LTD
3 benefits (resulting in a look back period of December 30, 2017 through March 30, 2018).
4 Dkt. 9 at 9. Gustafson-Feis argues that Reliance caused her misunderstanding by failing
5 to cite the policy language governing calculation of effective dates in its correspondence
6 when adjusting her claim. Dkt. 14 at 4. She contends that under the correct look-back
7 period, "the Tramadol prescribed by Schweizer is the only tenuous basis for a denial, and
8 the pain for which it was prescribed was unrelated to the injury which would ultimately
9 disable her." Dkt. 9 at 9.

10       Thus, Gustafson-Feis concedes that even the look-back period she believes is
11 correct captures the January 26, 2018 refill of her Tramadol for lingering nerve pain from
12 the 2016 accident, which she was attempting to safely taper down. Gustafson-Feis's
13 preferred look-back period would also appear to include her Gabapentin refill on January
14 16 and February 20, 2018, and her Tramadol refill on March 16, 2018, which Reliance
15 cites in its response and Gustafson-Feis does not dispute in reply. Dkt. 13 at 14.

16       As noted, the policy defines a pre-existing condition to include injuries for which
17 the insured "received medical Treatment, consultation, care or services, including
18 diagnostic procedures, or took prescribed drugs or medicines . . . ." AR 25. The Court
19 agrees with Reliance that even assuming Gustafson-Feis is correct that the look-back
20 period extends only to December 30, 2017, it captures "prescribed drugs or medicines"
21 for injuries sustained in the 2016 accident. While Gutsafson-Feis characterizes this basis
22 for a denial as tenuous, she does not cite authority establishing, for example, that

treatment for a pre-existing condition during the look-back period must be more than de minimis.

However, that does not end the inquiry. Gustafson-Feis persuasively demonstrates that Reliance has not met its burden to show the identified pre-existing condition(s), i.e., her 2016 injuries, substantially caused her 2018 disability. The Court thus turns to that analysis.

C.  **Cause of Disabling Condition**

When deciding entitlement to coverage under ERISA, the Ninth Circuit "has generally applied federal common law to questions of insurance policy interpretation." *Dowdy v. Metro. Life Ins. Co.*, 890 F.3d 802, 808 (9th Cir. 2018). "In developing federal common law, courts must adopt a rule that 'best comports with the interest served by ERISA's regulatory scheme.'" *Id.* (quoting *PM Grp. Life Ins. Co. v. W. Growers Assurance Tr.*, 953 F.2d 543, 546 (9th Cir. 1992)). "Congress specifically stated that it is 'the policy of [ERISA] to protect . . . the interests of participants in employee benefit plans and their beneficiaries' and to 'increase the likelihood that participants and beneficiaries . . . receive their full benefits.'" *Id.* (quoting 29 U.S.C. §§ 1001(b), 1001b(c)(3) (alterations in original)).

The insurer bears the burden to establish that an exclusion applies. *Id.* at 810 (citing *Mario v. P&C Food Mkts., Inc.*, 313 F.3d 758, 765 (2nd Cir. 2002)). "To apply an exclusion for a disability that is 'caused or contributed [to] by' a preexisting condition . . . the insurance provider must show that the disability was '*substantially* caused or contributed [to] by' the preexisting condition.'" *Haddad v. SMG Long Term Disability*

*Plan*, 752 F. App'x 493, 494–95 (9th Cir. 2019) (quoting *Dowdy*, 890 F.3d at 809–10 and citing *McClure v. Life Ins. Co. of N. Am.*, 84 F.3d 1129, 1136 (9th Cir. 1996) (per curiam) (emphasis in original)). To illustrate how to conceptualize a substantial contributing factor, the Ninth Circuit has cited the Fourth Circuit's explanation: that pre-disposition or susceptibility to injury is insufficient when the degree of the relationship is undetermined. *Dowdy*, 890 F.3d at 809 (citing and quoting *Adkins v. Reliance Std. Life Ins. Co.*, 917 F.2d 794, 797 (4th Cir. 1990)).

The Ninth Circuit holds that if an exclusion is inconspicuous, the policyholder reasonably expects coverage if the accident is the predominant or proximate cause of the disability. *Id.* at 808. If the language is conspicuous, "recovery could be barred if a preexisting condition substantially contributed to the loss, 'even though the claimed injury was the predominant or proximate cause of the disability.'" *Id.* (quoting *McClure*, 84 F.3d at 1135–36). Like *Dowdy* and *Haddad*, the Court need not decide this issue because Gustafson-Feis is entitled to recovery "even under the more demanding substantial contribution standard." *Dowdy*, 890 F.3d at 808; *Haddad*, 752 F. App'x at 494 n.1.

Like in *Haddad*, the exclusionary language here is narrow—there, the exclusion applied "only if the disability 'results from, or is caused or contributed by, a *Pre-existing condition.*'" 752 F. App'x at 494 (emphasis in original). The language in Reliance's policy is the same—the exclusion applies to disability caused by, contributed to by, or resulting from a pre-existing condition. Under such language, the Ninth Circuit explained that "for the exclusion to apply, [the insurer] must show that [the insured's] *preexisting*

*condition itself . . .* substantially caused or contributed to [the disability]." *Id.* "[T]o determine whether a cause is substantial, 'there must be some evidence of a significant magnitude of causation.'" *Id.* (quoting *Dowdy*, 890 F.3d at 809).

Gustafson-Feis clearly sets out this standard in her motion. Dkt. 9 at 22–26. She correctly points out that Reliance's response does not contest her characterization of the standard or clearly articulate its case for substantial causation. Dkt. 14 at 9.

Reliance appears to contend that Gustafson-Feis's labral tear and/or her 2018 disability represent the continued progression of her 2016 injuries and not a new injury. However, the evidence it cites does not meet its burden under *Dowdy* and *Haddad*.

As noted, Reliance's peer reviewer, Dr. Hulett, determined that "[t]he most logical conclusion after a review of medical records is that her alleged impairing conditions as of 8/20/218 were directly related to the conditions for which she was treated as of 11/13/17-2/13/18." AR 326. She further opined that Gustafson-Feis's "records are most consistent with a gradual progression of symptoms and not any new injury." *Id.* Reliance cites these conclusions in the factual background section of its response, Dkt. 13 at 6, but does not make a legal argument that they demonstrate substantial causation.

Any such argument would be unpersuasive—an assertion that conditions are "directly related" does not illustrate how one condition *caused*, let alone substantially caused, the other. *See Dowdy*, 890 F.3d at 809 (citing and quoting *Adkins*, 917 F.2d at 797). Dr. Hulett's statement that Gustafson-Feis's records are "most consistent with a gradual progression of symptoms" does not account for Gustafson-Feis's trajectory—continued improvement and recovery through her return to work without restrictions in

December of 2017, followed by severe impairment following the labral tear on her trip to China in May 2018. Specifically, Dr. Hulett does not explain how a labral tear would result from a gradual progression of the prior fractures or pain, does not assert that Gustafson-Feis would have been disabled by the lingering effects of her 2016 injuries had she not suffered the labral tear, and does not identify a *degree* of causation between the 2016 injuries and the 2018 labral tear. *See id.* at 809–10 (while wound healing was complicated by diabetes, the record did not show, "even generally," how much of a role that complicating factor played in the plaintiff's failure to recover).

In the section of its response titled "There is Evidence to Find That the 2016 Accident Substantially Contributed to the Claimed Disability," Reliance argues that though Gustafson-Feis "claims that her hip injury is 'new' and unrelated to the accident, there is evidence to the contrary." Dkt. 13 at 10. Specifically, Reliance argues that the injuries from the 2016 accident "were severe and significant," and cites three sets of medical records: (1) treatment with Dr. Tian at the Washington Center for Pain Management referencing her sacrum fracture that had not fused, (2) therapy records stating that the 2016 accident caused "a lot of damage to her low back and pelvis" and caused continuing nerve damage in her lower back and anterior thighs, and (3) chart notes from Schweizer at Bothell Women's Health characterizing the labral tear as a "re-aggravation" or "re-injury" to her hip. *Id.* at 10–11. However, none of these statements articulate a "significant magnitude of causation," *Haddad*, 752 F. App'x at 494, particularly when compared with Dr. Bruckner's clear statement that FAI is a congenital condition not caused by previous injury. Gustafson-Feis's allegations in the New York

lawsuit similarly do not establish that her 2016 injuries substantially caused her 2018 disability—it is entirely possible that without the 2018 injury, she would have remained able to perform her normal occupation despite experiencing some ongoing pain from the 2016 injuries.

Therefore, the debate about the look-back period is beside the point. Every construction of the look-back period captures some medication related to the accident, and Gustafson-Feis cites no authority requiring that treatment for a pre-existing condition within the look-back period be substantial. However, Reliance has failed to engage with, let alone carry, its burden to establish that the accident was a substantial cause of Gustafson-Feis's 2018 disability. There is certainly conflicting medical evidence in the record, and there is evidence from which a factfinder could find some degree of causation between the 2016 injuries and the 2018 disability. However, Reliance has the burden to prove substantial causation, and it has not made a sufficient showing to survive summary judgment. *Celotex*, 477 U.S. at 323. Thus, Gustafson-Feis is entitled to summary judgment that her claim for disability benefits is not barred by the policy's pre-existing condition exclusion.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Gustafson-Feis's motion for summary judgment, Dkt. 9, is **GRANTED**.

Dated this 21st day of April, 2021.

BENJAMIN H. SETTLE
United States District Judge